```
                UNITED STATES BANKRUPTCY COURT
                 FOR THE DISTRICT OF NEW MEXICO
```

In re:
JOHN DRYDEN BEAVER; and
SUSAN J. BEAVER,
    Debtors.                    Case No. 7-10-11028 SS


TED GROVE,
    Plaintiff,

v.                                        Adversary No. 10-01050 S

JOHN DRYDEN BEAVER,
    Defendant.

### MEMORANDUM OPINION IN SUPPORT OF ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Ted Grove ("Grove" or "Plaintiff") seeks a nondischargeability judgment against Debtor John Dryden Beaver ("Beaver" or "Defendant") arising out of Beaver's defective construction of Grove's house based on §§523(a)(2), (a)(4) and (a)(6). Defendant has moved for summary judgment on the claims. The Court grants summary judgment on the §523(a)(4) claim and denies it on the §§523(a)(2) and (a)(6) claims.[1]

### Procedural Background

On December 14, 2006, Grove sued Beaver in state court and obtained a default judgment on November 19, 2009 which is now final and non-appealable (doc 2, ¶ 8-9). On March 3, 2010,

---

[1] The Court has subject matter and personal jurisdiction pursuant to 28 U.S.C. §§1334 and 157(b); this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I); and these are findings of fact and conclusions of law as may be required by Rule 7052 F.R.B.P.

Defendant filed a Chapter 7 bankruptcy petition.  In response, Plaintiff initiated this adversary proceeding to prevent Defendant from discharging the judgment debt.  Plaintiff moved for summary judgment on June 30, 2010, asserting that the state court's findings were entitled to collateral estoppel.  That motion was denied since default judgments do not have preclusive effect in the State of New Mexico (doc 16).[2]  Defendant has now filed this Motion for Summary Judgment (doc 24), to which Plaintiff has filed a Response (doc 30).

**Summary Judgment Standard**

Summary judgment is warranted when "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Bankruptcy Rule 7056(c).  The moving party must establish that there are no disputed material facts and that they are entitled to judgment as a matter of law. In order to defeat such a motion, nonmovant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)(internal citations omitted).  The Court must view the facts in the light

---

[2] See, for example, Blea v. Sandoval, 107 N.M. 554, 558, 761 P.2d 432, 436 (Ct. App.), cert. denied, 107 N.M. 413, 759 P.2d 200 (1988) ("In New Mexico, we recognize that default judgments do not have collateral estoppel effect in future litigation, although they may have res judicata effect.").

2

most favorable to the party opposing summary judgment.[3]

**Factual Background**

At the heart of this case is the construction of a dream home gone horribly wrong by one account (Plaintiff's) or a home with some moderate shortcomings by another account (Defendant's).[4] While the evidence strongly suggests that Plaintiff is the party who has more accurately assessed the status of the home, the issue for the Court is, at this stage, merely the question of liability.

---

[3] Harris v. Beneficial Oklahoma, Inc. (In re Harris), 209 B.R. 990, 995 (10th Cir. BAP 1997)("When applying this standard, we are instructed to 'examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.' ") Wolf v. Prudential Ins. Co. of America, 50 F.3d 793, 796 (quoting Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990)) (internal quotation marks omitted); Henderson v. Inter-Chem Coal Co., 41 F.3d 567, 569 (10th Cir.1994)(stating that the court must "view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party ...").

[4] "The picture one gleans from the Amended Complaint is that of a dissatisfied customer who wants more hot water and a straighter wall." Defendant's Motion for Summary Judgment, at 7 (doc 24). Plaintiff's allegations, based in part on an analysis by a professional engineer, include an unstable load-bearing retaining wall in the basement, a failure to join the concrete floor to the stem wall resulting in "the floor [being] free-floating in relation to the house and [cracking] significantly", improper waterproof membrane installed on the below-surface exterior walls, solar hearing system that leaks, heated water reservoir that was modified by Defendant so that it fails to provide sufficient hot water, and several citations by the New Mexico Construction Industries Division for building code violations, failure to call for inspections, etc. Affidavit of Ted Grove, at 2-5 (docs 30-2 and 30-3).

3

According to Defendant's Affidavit, Beaver contracted to build Ted Grove a home during 2004-05 (doc 24, ex. 2). However, according to Plaintiff, things quickly began to turn for the worse. Grove alleges that Beaver "failed to comply with applicable building codes, manufacturer's specification and the plans for the job", "began construction of the garage without a permit," "failed to comply with NM CID inspector's instructions to remedy various building code violations," and then "abandoned the job" despite "owner's repeated requests to complete the job," (doc 24, pp. 3-4). Grove contends that Beaver's debts over the botched construction job are non-dischargeable in bankruptcy on account of Beaver's allegedly fraudulent behavior (doc 2, pp. 3-4). Beaver argues that the debt is dischargeable, urging that although Grove is not have been happy with the result, Beaver used his "best efforts," "never attempted to cause [Grove] or his property any injury," and "never said anything false to Plaintiff," (doc 24, ex. 2, ¶ 9-10, 12). Furthermore, Defendant asserts that he never acted in a fiduciary capacity for Grove (doc 24, ¶ 4-7).

**Disputed Facts**

Defendant sets out seven material undisputed facts, only the last two of which are disputed. Defendant's fact #6 recites that Defendant has never made any false statements to Plaintiff (doc 30, p. 3). Fact #7 states that "Defendant did not have any

4

intent to harm Plaintiff at any time" (doc 24, p. 2). Plaintiff's general objections are responsive to both disputed facts (doc 30, pp. 4-5). Plaintiff relies on his affidavit which disputes Beaver's capability, at the time of the contract, to build a hot water heater (doc 30, ex. 2, p. 2). Plaintiff also cites to the affidavit and asserts that the solar heating system did not work, the waterproof membrane was not suitable, the floor has cracked due to defects in construction, and Beaver abandoned the job without warning (doc 30, ex. 2[5], p. 3; doc 30, ex. 2, pp. 1-2). Plaintiff has provided further evidence that the house, as constructed, was not in accordance with applicable building codes (doc 30, ex. 2, p. 3; doc 30, ex. 4-13). The facts cited in the affidavit demonstrate that there are genuine issues of fact as to whether Defendant ever made a false statement to or intended to harm Plaintiff.

**Nondischargability under 523(a)(4)**

Plaintiff brings a claim for nondischargability under 11 U.S.C. §523(a)(4), which provides for the nondischargability of any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." 11 U.S.C. §523(a)(4). Plaintiff's apparent primary basis for this complaint is that "Beaver received funds from Grove in a fiduciary capacity and thereafter committed fraud and defalcation which caused Grove to

---

[5]The Affidavit is split into exhibits 2 and 3.

5

sustain a loss," (doc 2, ¶ 13).  However, Plaintiff does not controvert, and therefore admits that Defendant was paid only upon completion of specific phases of work and never received any advances (doc 24, ¶ 3; doc 30).

"The existence of the fiduciary relationship is a threshold issue to be determined under §523(a)(4)."  In re Merrill, 246 B.R. 906, 921 (Bankr. N.D.Okla. 2000)(citing Antlers Roof-Truss and Builders Supply v. Storie (In re Storie) 216 B.R. 283, 286 (10th Cir. BAP 1996).  In order for the Court to find the existence of a fiduciary relationship under §523(a)(4), money or property must have been placed in the custody of the debtor.  See Fowler Bros. v. Young (In re Young), 91 F.3d 1367, 1371 (10th Cir. 1996).  Plaintiff asserts that Allen v. Romero (In re Romero), 535 F.2d 618 (10th Cir. 1976) establishes a fiduciary duty between all licensed contractors and their clients (doc 30, p. 10) such that any action that would justify revocation of a license constitutes the basis for not discharging a debt arising from such action.  It does not.  As the Bankruptcy Court for the District of Colorado correctly explained, Romero only established a fiduciary duty on the part of licensed contractors "with regard to funds advanced by the owner for payment of subcontractors and suppliers."  Cundy v. Woods (In re Woods), 284 B.R. 282, 288 (Bankr. D.Colo. 2001); Horejs v. Steele (In re Steele), 292 B.R. 422, 428, 429 (Bankr. D.Colo. 2003).  Romero itself is clear that

6

its factual predicate was the advance of funds: "[the Construction Industries Licensing Act] clearly imposes a fiduciary duty upon contractors who have been advanced money pursuant to construction contracts." Id. at 621. Since Plaintiff has constructively admitted that there were no such advances, Plaintiff's claim under §523(a)(4) fails as a matter of law on that basis.

Plaintiff also cites to the part of the Construction Industries Licensing Act ("CILA") that specifies the grounds for revoking a license. NMSA §§60-13-23. These grounds, other than subsection (F), appear to not involve any transfers of funds.[6] It is not immediately apparent that the behavior specified in the cited subsections of the statute are related to any fiduciary duty that a contractor might ordinarily have, or specify instances of conduct that are clearly dischargeable without a further showing of fraud or malicious or wilful intent. For example,(A) ("If a licensee ... by reason of incompetence violates any provision of [CILA] ...."); (E) ("Unjustified abandonment of any contract...."); and (G) ("Departure from ... plans or specifications ...."). Nevertheless, Plaintiff has not briefed this specific issue at all (nor has Defendant) and

---

[6] Subsection (F) carries forward the statutory provision upon which In re Romero is based: "conversion of funds or property received for prosecution of completion of a specific contract or for a specified purpose in the prosecution or completion of any contract, obligation or purpose...."

7

therefore the Court does not rule on this part of the §523(a)(4) claim. If Plaintiff wishes to pursue this theory of nondischargeable liability, he must brief the issue.

For the foregoing reasons, the Court will grant summary judgment on the §523(a)(4) count.

**Nondischargability under §523(a)(6)**

Plaintiff also claims nondischargability under §523(a)(6), which provides for nondischargability of debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. §523(a)(6). Plaintiff's complaint in this respect is deficient:

> 14. With respect to liability under Section 523(a)(6), the Findings and Conclusions, as well as the Judgment, establish that Beaver caused a deliberate and intentional injury to Grove and his property. See Kawaauhau v. Geiger, 523 U.S. 57 (1998).

Doc 2, at 4-5. The "Finding of Facts and Conclusions of Law" issued by the State Court recite that "Defendant's wrongful conduct in this case was tortuous [probably true but also tortious], intentional, reckless, willful, wanton, negligent and in bad faith." Doc 2-3 at 8 (Finding 48). Thus the complaint, even taken together with the exhibit, strictly speaking fails to state a cause of action because it fails to simply recite that the behavior in question was "wilful and malicious". And in Response to the Motion for Summary Judgment, Plaintiff incorrectly argues that "debt resulting from willful or malicious

8

injury by the debtor to another entity or the property of another entity is not dischargeable," (doc 30, p. 12)(emphasis added). On the contrary, the conduct in question must be both willful and malicious. Panalis v. Moore (In re Moore), 357 F.3d 1125, 1129 (10th Cir. 2004). At the same time, Defendant has argued the sufficiency of the §523(a)(6) count on the "merits" of a summary judgment standard and not from the viewpoint of a sufficiency of the pleadings.[7] The Court will therefore assume for purposes of the summary judgment motion and for trial that the Amended Complaint has been further amended to assert a standard of "willful and malicious", unless Defendant files a motion specifically asking that Plaintiff be required to amend the amended complaint.

Given that posture (that is, assuming that Plaintiff had stated and argued the correct standard), Plaintiff's §523(a)(6) claim survives this summary judgment motion. While it seems quite unlikely, one could perhaps imagine a situation in which Beaver took on the project knowing that he was incapable of

---

[7] The Court is not at all faulting Defendant's counsel for not moving for a dismissal of the §523(a)(6) count on the grounds of insufficient pleading. The Court assumes that Defendant's counsel thought that Plaintiff could so easily amend that count that it was not worth the expenditure of resources to formally pursue it. The result then of this discussion is that the parties, and particularly Plaintiff's counsel, will presumably use the correct standard going forward. Should Defendant's counsel disagree with this disposition, he is of course welcome to move this Court to change its ruling.

9

performing competently and therefore knowing (and in effect intending) that he would harm Grove's property.[8]

Having made the foregoing ruling, the Court need not specify now with more precision what are the limits of liability of §523(a)(6) liability.[9] For example, relying on In re Campos, 768 F.2d 1155, 1158(10th Cir. 1985) (rejecting a "reckless disregard" standard and defining "wilful" to mean deliberate or intentional), the Honorable Mark B. McFeeley stated that

> [f]inding that the debt at issue is non-dischargeable based on an inference that the Defendant knew or should have known that his reckless driving would result in injury inappropriately expands the scope of nondischargeability under 11 U.S.C. § 523(a)(6) to include acts of negligence under an objective, reasonable person standard.

Tso v. Nevarez (In re Nevarez), 415 B.R. 540, 546 (Bankr. D.N.M. 2009). However, in that same decision Judge McFeeley used a standard which was whether "Defendant knew the harm to Plaintiff was substantially certain to occur". Id. Such a standard clearly goes beyond negligence and even recklessness. "[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." Kawaauhau v. Geiger,

---

[8] At any trial, the Court's decision will be governed in part by the standard that doubt is to be resolved in Defendant's favor. Bellco First Federal Credit Union v. Kaspar (In re Kaspar), 125 F.3d 1358, 1361 (10th Cir. 1997).

[9] The Court raises the issue now simply to put the parties on notice that where to draw the lines for non-dischargeability in this instance may not be easy to determine.

10

523 U.S. 57, 64 (1998). In consequence, it is possible that Beaver knew that given his abilities or lack thereof, he was substantially certain to harm Grove's property. The Court cannot make that determination on the record as it now exists.

**Elements of Nondischargability under §523(a)(2)(A)**

Plaintiff also brings a claim for nondischargability under 11 U.S.C. §523(a)(2)(A), which prevents funds obtained through common-law torts, such as fraud, from being discharged through bankruptcy. Field v. Mans, 516 U.S. 59, 69 (1995). The relevant portion of the Code reads as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt ...(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by — (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. 523(a)(2)(A). As this Court (the Honorable Mark B. McFeeley) detailed in Lazaron v. Lucas (In re Lucas), 386 B.R. 332 (Bankr. D.N.M. 2008), a Plaintiff must prove the following elements to succeed in a claim under 523(a)(2)(A):

1) The debtor made a false representation;

2) the debtor made that representation with the intent to deceive the creditor;

3) the creditor relied on the representation;

4) the creditor's reliance was justified; and

5) the creditor was damaged as a result of that reliance.

11

Id. at 337-38. With respect to this cause of action, Plaintiff's complaint alleges all of the requisite elements[10] (doc 2). Read favorably, Plaintiff alleges five counts of misrepresentation:

1) Beaver asserted that he was capable of building the house in accordance with the plans (doc 30, p. 5);

2) Beaver asserted he "would do a workmanlike job" (doc 30, p. 5);

3) Beaver "assured the Plaintiff that he could design and install a solar heating system that would be as good as the Plaintiff's first choice" (doc 30, p. 7);

4) Beaver promised Plaintiff that he would build a "good house" (doc 30, p. 3); and

5) Beaver promised Plaintiff that he would accompany him on a walk-through of the house and correct anything that was not to Plaintiff's satisfaction.

Plaintiff puts forward a compelling argument that Defendant did not build a proper house, but this is not the same as an argument that Defendant could not have done so, nor that Defendant honestly, or even negligently, believed at the time he made the representations that he would do so. In essence, what Plaintiff seeks is a factual determination that Defendant, at the

---

[10]Plaintiff alleges that he "reasonably relied" on Beaver's alleged misrepresentations. While this is no longer the correct standard after Field v. Mans, the justifiable reliance standard is less burdensome than the reasonable reliance standard alleged here. Field v. Mans, 516 U.S. 59 (1995).

12

time the representations were made, knew he could not or would not perform as represented. See <u>Yunkers v. Whitcraft</u> 57 N.M. 642, 261 P.2d 829 (1953) (fraud not shown when evidence did not establish that defendants did not intend to perform in the future as promised). While it seems unlikely that Plaintiff will be able to prove the second element of fraud, intent to deceive, the Court cannot say as a matter of law that Plaintiff will be unable to prove it, particularly given what Plaintiff alleges is a catalog of such major construction defects.

> Rarely is it appropriate to grant summary judgment on a claim for non-dischargeability based on 11 U.S.C. §523(a)(2)(A) because [the determination of whether there was an] intent to defraud often depends the credibility of the witness.

<u>In re Lucas</u>, 386 B.R. at 338. The Court therefore cannot grant summary judgment on the §523(a)(2)(A) count.

**<u>Conclusion</u>**

For the foregoing reasons, the Court finds that Defendant is not entitled to summary judgment under 11 U.S.C. §523(a)(2)(A) or §523(a)(6) but that Plaintiff's claim under §523(a)(4) fails. Plaintiff's claims under §523(a)(2)(A) and §523(a)(6) survive because Plaintiff cited specific statements in the affidavit of Ted Grove that demonstrate material issues of fact as to Defendant's intent. Defendant's Motion for Summary Judgment will be GRANTED with respect to Plaintiff's claim under §523(a)(4) and DENIED with respect to Plaintiff's claims under §523(a)(2)(A) and

13

§523(a)(6). The Court will also set a status conference to set discovery deadlines or a trial date as needed. An order consistent with this opinion will enter.

                              James S. Starzynski
                              United States Bankruptcy Judge

Date Entered on Docket: August 8, 2011

COPY TO:

John E Farrow
PO Box 35400
Albuquerque, NM 87176-5400

Michael K Daniels
PO Box 1640
Albuquerque, NM 87103-1640

14

Case 10-01050-s    Doc 31    Filed 08/08/11    Entered 08/08/11 15:16:34 Page 14 of 14